UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOSHUA R. WALLACE,                )
                                  )
        Plaintiff                 )
                                  )
v.                                )     No. 2:10-cv-428-GZS
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
        Defendant                 )

# REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Supplemental Security Income ("SSI") appeal raises four issues: whether the administrative law judge should have found a list of impairments to be severe; whether she failed to evaluate correctly the plaintiff's residual functional capacity ("RFC"); whether she improperly evaluated his credibility; and whether she deprived him of his right to a full and fair hearing. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from degenerative changes of the lumbar spine at L3-S1 with stenosis, obesity, cannabis dependence, mood disorder, and a learning disorder in arithmetic, impairments that were severe but which,

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me by telephone on September 13, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 2-3, Record at 11; that he retained the RFC to perform light work, except that he is limited to occasional stooping, balancing, crouching, crawling, kneeling, and climbing of ladders, step stools, ramps and stairs; can carry out basic one-to-three step instructions throughout a normal workday and workweek with normal breaks; must avoid concentrated exposure to dangerous moving machinery and unprotected heights, which also eliminates exposure to ropes and scaffolds, and cannot perform jobs requiring the use of arithmetic, Finding 4, *id.* at 14; has no past relevant work, Finding 5, *id.* at 19; that, given his age (a younger individual on the date the application was filed), at least a high school education, and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id.* at 19-20; and that, as a result, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time since April 17, 2008, the date the application was filed, Finding 10, *id.* at 21. The Decision Review Board failed to review the decision in the time allowed, *id.* at 1, making it the final determination of the commissioner, 20 C.F.R.§ 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The appeal also implicates Step 2. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Step 2

The plaintiff contends that the administrative law judge was required to find the following impairments to be severe at Step 2, in addition to those that she did so find: attention deficit hyperactivity disorder (ADHD), oppositional defiance disorder, learning disorder, bipolar disorder, and three-level disc herniations with contact with the S1 nerve root and resulting right lower extremity radiculopathy. [Itemized Statement] (Docket No. 12) at [8]. The administrative law judge's opinion does not mention any of these impairments specifically, although the last one, the disc herniations, appears to me to be included in the "degenerative changes of the

lumbar spine at L3-S1" found by the administrative law judge to exist.[2] Record at 11.[3] In none of these instances does the plaintiff specify what effect each would necessarily have on his ability to work, other than a conclusory assertion that "[t]he Plaintiff's conduct and actions are consistent with these diagnoses and in turn, would interfere with basic work activities to more than a minimal or slight degree." Itemized Statement at [14]. Again, at oral argument, the plaintiff's attorney asserted that these conditions "must have had more than a minimal impact" on his ability to perform basic work activities, but provided no more specificity.

That is not enough. The plaintiff must show how a failure to find each omitted impairment to be severe would necessarily change the outcome of his claim. *Foley v. Astrue,* No. 2:10-cv-264-DBH, 2011 WL 2610186, at *2 (D. Me. June 30, 2011); *Saucier v. Astrue*, No. 2:10-cv-111-DBH, 2011 WL 1158256, at *4 (D. Me. Mar. 28, 2011); *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010). He has not done so.

The same rationale applies to the plaintiff's contention that the administrative law judge's asserted failure to find these impairments to be severe requires remand because it "means that her residual functional capacity assessment is incomplete.'" Itemized Statement at [15]-[16]. That contention is inconsistent with established law in this district. *Bolduc*, 2010 WL 276280 at *4 n.3.

---

[2] The only pages of the record cited by the plaintiff in connection with his contention that the administrative law judge wrongly "failed to add the severe impairments of central dis[c] herniation at L3-4, a small central and right paracentral disc herniation at L4-5, and a relatively large central and left-sided disc herniation at L5-S1. (Tr at 357). She further failed to identify the [p]laintiff's lumbar radiculopathy resulting from an extruded dis[c] fragment at L5-S1 in the epidural space which almost certainly creates mass effect of the left S1 root[] (Id.); persistent contact with the left S1 root[] (Record at 726); contact with the L4 exiting root sleeves bilaterally from the disc herniation which compresses the thecal sac; and contact with the proximal S1 root from the disc herniation at L4-5. (Record at 726)[,]" Itemized Statement at [14]-[15], are found in the records of Campus Avenue Family Practice. Both at reports of MRIs of the spine, one taken on April 26, 2007, Record at 357, before the date of application (April 17, 2008; *id.* at 7*)*, and the other on February 9, 2009, *id.* at 726. Records of this treating group are accurately cited by the administrative law judge, *id.* at 12, and those dated after the second MRI report normal gait, sitting comfortably, and sitting to standing without difficulty. *Id*. at 734, 764. The administrative law judge was entitled to rely on these reports.

[3] At oral argument, counsel for the plaintiff appeared to agree with my conclusion.

The plaintiff takes nothing by his first two arguments.

## B. Credibility

The plaintiff contends that the administrative law judge's assessment of his credibility is fatally flawed because the findings on which she based her assessment are contradicted by the facts in the record. Itemized Statement at [16]-[19]. He identifies four such findings. The plaintiff's first error is that the administrative law judge's credibility assessment was not based solely on the four "findings" that the plaintiff lists.

To illustrate the breadth of the administrative law judge's credibility assessment, it is useful to acknowledge in detail what she said about the plaintiff's credibility:

> The claimant testified that he was terminated from a telemarketer job because he falsified his job application by not including information about a past felony conviction (Exhibit 22F, p.2; Hearing Testimony). He indicated that he likes his girlfriend to stay around, because he cannot keep up with the kids (1 year old and 5 years old), but also testified that he "hangs out" with his friends (of 3-4 years) daily, and they usually play games on his PlayStation, talk a lot, listen to music and eat munchies. Once the kids go to bed, he indicated his girlfriend will go out with her friends, and he will stay home to keep an eye on the kids while they are sleeping. He also testified that they split the care and responsibilities for the children. . . . He reported that although he may require help putting on his socks, he has no problem bathing or attending to his personal care (Exhibit 8E, p. 2; Hearing Testimony). In addition, he is able to cook for himself and two children and washes dishes daily (Exhibit 8E, p. 13; Hearing Testimony). He shops with his girlfriend, visits with his mother and sister once a week, and enjoys playing video games, reading magazines, listening to music, and watching music videos (Exhibit 8E, pp. 4-6; Hearing Testimony). Finally, he testified to being able to lift up to 15 pounds comfortably, as well as a laundry basket that is not too full.
> \* \* \*
> However, subsequent treatment records indicate that the claimant refused to pursue epidural steroid injections, attended only three physical therapy sessions, and despite reporting some benefit from the use of a TENS unit, he did not bring the unit to an appointment for evaluation after reporting that it was not working nor did he follow up for repair thereafter. This evidence is inconsistent with the level of pain alleged. Moreover, the medical evidence of record reveals, contrary to the

claimant's allegations, a level of physical activity consistent with the residual functional capacity.

\* \* \*

He reported to Kristen Schroeder, NP (Ms. Schroeder) that sitting, standing, walking, or lifting exacerbates his pain (Exhibit 5F, p.1). However, on examination, Ms. Schro[e]der observed that, although he did look somewhat uncomfortable and repositioned himself in his chair, the claimant demonstrated no pain behaviors or posturing, required no assistance moving from seated to standing position, and walked with a steady and nonantalgic gait (Exhibited 5F, p.2). Thereafter, the claimant reported doing okay with his medications and in September 2008, presented to St. Mary's emergency department complaining of back pain after working the day before, helping someone move (Exhibits 10F, pp. 5-8, 14-17; and 12F, pp. 16-17). In October 2008, he presented to Dr. Raby stating that he was chasing after his family and inadvertently tripped and fell (Exhibit 10F, pp. 1-3). Dr. Raby examined the claimant and diagnosed him with lumbar-spine strain noting no evidence of radiculopathy or compression of the cord or cauda equine (Exhibit 10F, p.2). This level of activity is consistent with the above residual functional capacity.

\* \* \*

Thereafter, the claimant presented to the emergency room complaining of back pain but Oscar Falconer, PA observed the claimant walking around the department and sitting down without discomfort (Exhibit 18F, p. 21). In April 2010, he presented to Tracey Toner, NP (Ms. Toner) complaining of increased lower back pain since moving to a new residence last week and right-knee pain after slipping in the mud while on a hill (Exhibit 23F, p.6). Again, this level of activity is consistent with the above residual functional capacity.

The medical evidence of record reveals that the claimant's reported pain levels are mostly 5 out of 10 and above, but are 3 out of 10 on a good day (Exhibits 5F, 6F, p. 38; 10F, p.1; 12F; 13F; 18F; 19F; and 20F, p. 14). However, the medical evidence of record also indicates that he declined epidural steroid injections offered by Dr. Woelflein because he is afraid of needles (Exhibits 5F, p. 2 and 6F, p.5). The claimant also reported his use of a TENS unit helped with his pain and increased his functioning (Exhibits 5F, p.1 and 6F, pp. 5, 11). However, [i]n December 2009, he reported that his TENS unit was not working (Exhibit 20F, pp. 14-19). He subsequently forgot to bring the unit to his follow up appointment to evaluate the unit for repair; and by[] April 2010, the claimant had yet to have his TENS united repaired (Exhibits 20F, pp. 2, 14-19 and 23F, p. 6). He further reported that Naproxen helps with his pain when he remembers to take it (Exhibit 20F, p.2). This evidence is inconsistent with the alleged nature and severity of the claimant's pain. In addition, treatment records also indicate that the

>claimant was noncompliant in keeping appointments and taking his medication, which is inconsistent with the level of pain alleged (Exhibits 5F, pp. 1-4; 6F, p.5; 10F, p.4; 16F, 18F, p.24; 19F, p. 9, 3; and 20F, pp. 2, 14-19). Finally, the claimant's reported activities of daily living and testimony as to "hanging" with fiends is also inconsistent with the nature of [sic] severity of his alleged pain.

Record at 15-17.

The administrative law judge also noted that, after a psychiatric examination by Dr. Zimmerman in June 2006, the plaintiff's records "consistently reflect normal psychiatric examinations and no record of any therapy or use of psychotropic medications" and that Tegretol and Wellbutrin were prescribed by Dr. Michaud in November 2008 less than two months after the plaintiff reported to Dr. Ginn that he had no current anxiety symptoms and was not being treated for any mental impairment. *Id*, at 18. She also noted that the plaintiff then "missed several follow up appointments as well as being noncompliant with his psychiatric medications (Exhibit 19F, pp. 3, 6, 9, 13 and 20F, p. 14)." *Id*. He was again noncompliant with medication in February 2010. *Id*.

I have quoted the administrative law judge's opinion in considerable detail to demonstrate that, contrary to the plaintiff's presentation, the administrative law judge discussed more than four findings that caused her to discount the plaintiff's credibility. I now move to the four findings listed by the plaintiff, although, even if he were correct about the deficiencies in each, that would not be enough to merit remand, particularly where, as here, the plaintiff does not suggest how removal of the allegedly inaccurate findings would require a different outcome on his claim.

7

*1. Epidural Injections*

The plaintiff frames this finding as "[t]he Plaintiff 'refused to pursue epidural injections.'" Itemized Statement at [16]. He asserts that that "[t]he actual facts contradict this finding[,]" *id*. at [17], but they do not, and his ensuing discussion admits as much. He notes that he testified that he was "nervous of needles[,]" and the record reflects that he was "very scared of needles." *Id.* That much is accurate, Record at 54, 458, but a refusal of a treatment out of fear is nonetheless a refusal. The fact that the administrative law judge noted this refusal, while also noting his fear, *id*. at 17, does not establish, as he contends, that "[t]he ALJ decided to punish him for his fear[.]" Itemized Statement at [17].

The plaintiff contends, without citation to authority, that the administrative law judge was required to "question[] him about his refusal and fear at the hearing" before she could rely on his refusal as evidence raising any doubt about his credibility. *Id*. I am aware of no such legal requirement. Again, the finding is not "inaccurate," as the plaintiff would have it. A refusal of a means of relief from reported pain, whatever the reason for it, logically sheds doubt on a claim of intense pain. A reasonable fear must be considered, *see e.g., Miller v. Astrue*, No. CV-08-3076-JPH, 2009 WL 4110989, at *13 (E.D.Wash. Nov. 23, 2009) (ALJ erred in considering plaintiff's discontinuance of medication in making credibility determination where plaintiff reported side effects and fear of side effects as reasons for discontinuing medication), but a refusal merely due to a fear of the unharmful means of administering relief, while understandable, is by definition not reasonable. *See Galford v. Astrue*, Civil Action No. 5:09CV102, 2010 WL 5441634, at *19-*20 (N.D.W.Va. Dec. 8, 2010) and cases cited therein (dealing with fear of needles in context of credibility assessment).

8

## 2. *Physical Therapy*

The plaintiff next alleges that the administrative law judge "punished him for having no insurance or simply MaineCare" when she apparently found that the fact that he only attended three physical therapy sessions was a reason to discount his credibility. Itemized Statement at [17]]-[18]. He does not indicate where in her opinion this finding is stated. I assume the plaintiff refers to the brief mention of this fact on page 15 of the record.

The medical records do contain two entries recording the plaintiff's statement that he could not attend physical therapy after the third session because he had no insurance coverage. Record at 610, 677. I see no evidence that this information was brought to the attention of the administrative law judge, but, given these entries in the record, she should not have relied, as a basis for discounting the plaintiff's credibility, on a failure to pursue treatment that was due to an inability to pay. Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2011), at 140. However, this error, when the administrative law judge has given many other valid reasons for her credibility assessment, does not require remand.

## 3. *TENS Unit*

The plaintiff asserts that the administrative law judge "again ... punishes" him "for his lack of insurance by 'finding' that his failure to get his TENS unit repaired proves that his statements of pain are not credible." Itemized Statement at [18]. This is so, he contends, because he could not afford the replacement pads for the unit, citing page 611 of the record. That page of the record does record that the plaintiff told Dr. Michaud that he could not afford replacement pads on October 13, 2008, but the record entries about the TENS unit to which the administrative law judge referred dealt with a broken charger, Record at 731, and the fact that the plaintiff forgot to bring it in to his treating physician's office to address the broken charger in

9

January 2010, after reporting it broken in December 2009, *id*. at 743. The plaintiff has not shown that this entry in the administrative law judge's opinion had anything to do with the "replacement pads" for the machine that he could not afford in 2008.

*4. Physical Activity*

The final "finding" challenged by the plaintiff is somewhat unclear, but apparently he means to attack a statement that "[m]oreover, the medical evidence of record reveals, contrary to the claimant's allegations[,] a level of physical activity consistent with the residual functional capacity." Itemized Statement at [18]. Again, he does not cite the page of the record where this finding appears. I find it on page 16 of the record.

The plaintiff complains that "[t]he ALJ made this statement without identifying what specific medical evidence of record reveal[s] a level of physical activity contrary to what the plaintiff has claimed." *Id*. at [18]. He then assumes that it is based on two notes in the medical record mentioned on page 10 of the record and asserts that the administrative law judge's references to these notes "are cursory with no explanation of why the ALJ though[t] these notes were significant, and completely inadequate to justify a conclusion that the Plaintiff'[s] statements of pain are not credible." *Id*. at [18]-[19].

This argument is based on an overly narrow view of the administrative law judge's opinion. As the extensive excerpts from the opinion quoted above demonstrate, the sentence upon which the plaintiff concentrates both follows and precedes extensive discussions of the medical evidence of record and the entries in that record that are inconsistent with the plaintiff's claims of the extent of his symptoms. Those pages of the opinion provide an entirely adequate explanation of the conclusion set out in the cited sentence.

Nothing more need be said, but I note that the plaintiff incorrectly suggests that medical observations of his lack of pain-based behavior, while seeking treatment for such pain, are off limits to the administrative law judge as evidence of inconsistency, because "the Plaintiff did not claim that his worsening back pain was causing him problems walking or sitting down[,]"and are "completely irrelevant," Itemized Statement at [19]. Observations by trained medical professionals that they believe are inconsistent with the pain reported to them by a patient are highly relevant,

### C. Full Presentation of Case

The plaintiff's final issue that he contends entitles him to a remand is an assertion that the administrative law judge cut off questioning that his representative wanted to pursue and thus deprived him of procedural due process. *Id*. at [20]-[22]. He asserts, in conclusory fashion, that "the ALJ did not allow the Plaintiff a full and fair opportunity to be heard." *Id*. at [21]. Specifically, he refers to actions by the administrative law judge at pages 42, 46, 49, 54, and 56 of the record. *Id*. at [20]-[21].

At page 42, after the administrative law judge invited the plaintiff's attorney to ask the plaintiff "anything that would be additional to the questions I've already asked[.]" Record at 42. The attorney responded "Let's stay on the issue of sleep for a while. . . . I have a couple of questions about that." *Id*. After a brief discussion, the administrative law judge said "[H]e said he wakes up from the pain and all that . . . I do understand that[,]" and the attorney went on to ask questions on another topic. *Id.*

At page 46, after the plaintiff's attorney had asked him a series of questions about the "overthinking" that caused him difficulty getting to sleep, *id*. at 44-46, the administrative law

11

judge said, "All right counselor. I think I have a full understanding of this issue about recurring past bad experiences." *Id*. at 46. Again, the plaintiff's attorney went on to another topic.

On page 49, the administrative law judge said, "All right. I can see that there's, with Dr. M[ichaud] he writes about mood swings and he writes a couple places in his notes about going without sleep and then being very depressed. You are going through stuff that's in Dr. M[ichaud]'s record." The attorney responded, "That's not the only place, but yes." The administrative law judge then said, "Okay. You can ask if there is anything additional that's not contained in the record. I think the back impairment is pretty clear. We have the documented MRI." *Id*. at 49. After another exchange of brief remarks, the attorney said, "I'll ask him some more questions about the back, the pain." *Id*. at 50. The administrative law judge replied, "Well I don't think that – my point was that I don't think that was necessary. I do see what's going on in the MRI. If you want to specify about what he can and cannot do that might be helpful, but I want to sort of narrow the focus." The attorney went on to ask questions about the plaintiff's pain. *Id*.

On page 54, the attorney asked the plaintiff questions about his medications. At one point, the administrative law judge interrupted and said, "Yes, I've heard that part counselor[,]" but the attorney continued to ask questions that followed in a series. *Id*. at 54. When the plaintiff testified about "the person who prescribes [m]y Gabapentin" as "[i]t's Rebecca something. I don't remember her last name," the attorney said, "Rebecca Lathrop?" and the administrative law judge interjected, "Counselor, that's not critical." *Id*.

On page 56, in an exchange beginning on page 55, as the attorney was asking the plaintiff about work he had done in the past, the administrative law judge said, "All right. The past relevant work, counselor, I'm finding there is no past relevant work and based on the Claimant's

12

earnings and the short period that he performed jobs so we can move on." *Id*. at 55-56. The attorney replied, "Your honor, what I thought was important was the reasons why he had difficulty with the jobs." The administrative law judge said, "Okay and I understand." *Id*. at 56. The attorney then asked the plaintiff "[w]hat would be the biggest barriers for you to try to get yourself into a regular job?" After the plaintiff answered, the administrative law judge said, "Okay. I think we've covered all the bases." *Id*.

The plaintiff now says that he was "entitled to explain in his own words how his illnesses impacted him, including but not limited to, for example, why he sought an increase in his medications or why he had difficulty trying to work post-onset." Itemized Statement at [21]. Under existing case law, this showing falls far short of providing the plaintiff with a basis for remand.

Even when due process is invoked, reversal and remand is not warranted unless prejudice resulting from the challenged action or actions is shown. *Lewis v. Astrue*, No. 06-121-B-W, 2007 WL 2021912, at *5 (D. Me. July 11, 2007). The plaintiff "must show that, had the ALJ done [her] duty, she could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). The claim has no merit where, as here, a claimant fails to specify what additional testimony he would have given and how that testimony would have changed the result. *Williams v. Apfel*, No. 97 C 5551, 1998 WL 852872, at *9 (N.D.Ill. Dec. 4, 1998).[4]

The plaintiff here has shown no prejudice nor has he specified the testimony that he alleges he was barred from giving, and, without that information, he cannot claim that the result

---

[4] The assertion by counsel for the plaintiff at oral argument that the plaintiff need not show what he would have said under the circumstances of this case was incorrect.

would have been different but for the administrative law judge's interruptions. He takes nothing by this argument.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of September, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge